# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

|  |  |
|---|---|
| **JARRED MULLINS,** | CIVIL ACTION NO. 5:21-228-KKC-MAS |
| Plaintiff, |  |
| v. |  |
| **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,** | **OPINION AND ORDER** |
| Defendant. |  |

** ** ** ** **

This matter is before the Court on Plaintiff Jarred Mullins's and Defendant Travelers Property Casualty Company of America's cross-motions for summary judgment. (R. 19; R. 22.) The motions are fully briefed, and this matter is ripe for adjudication. For the reasons that follow, the Plaintiff's motion for summary judgment (R. 19) is DENIED and Defendant's cross-motion for summary judgment (R. 22) is GRANTED.

## BACKGROUND

The relevant facts of this case are straightforward and undisputed. It arises out of an accident that occurred on October 15, 2019, when Plaintiff Jarred Mullins, then an employee of Bluegrass Contracting Corp. (Bluegrass), was struck by a vehicle driven by Heidi Genton, an uninsured motorist. At the time of the accident, Mullins was flagging traffic on Southland Drive in Lexington, Kentucky while his co-worker, Chris Hensley, drove an excavator across the roadway.

Mullins arrived to work that morning and parked his vehicle at a business near the worksite. (R. 19-4, Plaintiff's State Court Deposition, at 25.) His supervisor, Todd Carmichael, picked Mullins up in Carmichael's work truck and drove through some parking lots to a location near where they would be working. (*Id.* at 25–26; R. 22-1, Plaintiff's

Deposition, at 45, 51–52.) After Mullins got out of the truck, Carmichael drove the truck to another area in the parking lot and parked the truck. (R. 22-1 at 45, 51–52.)

After Carmichael dropped him off in the parking lot near Southland Drive, Mullins proceeded to his job assignment, which he testified was to "help keep the traffic off of" Hensley, his co-worker, while Hensley moved an excavator across the roadway. (*Id.* at 54.) While flagging traffic for Hensley, Mullins was standing in the eastbound lane of Southland Drive, approximately 100–150 feet away from the parked truck. (R. 19 at 12–13.) As Hensley was driving the excavator across Southland Drive, Mullins was struck by Genton's vehicle causing him serious injuries. (*Id.* at 5–6.)

Because Genton was uninsured, Mullins sought uninsured motorist coverage under an insurance policy that Travelers had issued to Bluegrass (the Policy). The Policy provided uninsured motorist benefits to certain named insureds and individuals "occupying" a covered auto. (R. 19-11, at Page ID#: 375.) Mullins demanded uninsured motorist coverage on the grounds that the truck Carmichael had picked him up in was a covered auto and that he was "occupying" the truck at the time he was struck by Genton. While the parties agree that the truck qualifies as a "covered auto" under the Policy, Travelers disagreed that Mullins was "occupying" the truck at the time of the accident and thus twice denied his demands. (*See* R. 19-2; R. 19-3.)

On November 5, 2019, Mullins sued Genton in Fayette Circuit Court, and Genton filed a third-party complaint alleging negligence against Bluegrass for the injuries she sustained because of the accident. *Mullins v. Genton*, Fayette Circuit Court, Civil Action No. 19-CI-03942. In September 2020, Genton settled her negligence claims against Bluegrass and then settled with Mullins for $900,000. (R. 22-1 at 19–21.) Mullins did not notify Travelers that he had reached a settlement with Genton and did not request Travelers's consent to sign the settlement agreement. (R. 22-1 at 25–26.)

Mullins then filed the current action seeking uninsured motorist benefits from Travelers. On February 10, 2022, he filed a motion for summary judgment on the issue of insurance coverage, asking the Court to hold that he is entitled to uninsured motorist benefits under the Policy. (R. 19.) Travelers subsequently filed a response and cross-motion for

summary judgment, asking the Court to hold that Mullins was not "occupying" the truck at the time of the accident, and is therefore not entitled to coverage under the Policy. (R. 22.)

<h2 style="text-align:center">SUMMARY JUDGMENT STANDARD</h2>

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "not every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position—he must present sufficient evidence to allow a jury to find in his favor. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, and a properly supported motion will not be defeated by "the mere existence of a colorable factual dispute"—only a genuine dispute "on an issue of material fact

– 3 –

[will] render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Because the parties have filed cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Gassman*, 693 F.3d 681, 686 (6th Cir. 2012).

## ANALYSIS

Under Kentucky law, there are two types of insureds as it relates to uninsured motorist coverage: first-class insureds and second-class insureds. *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555, 557 (Ky. 1979). A first-class insured is

> the named insured, the insured who bought and paid for the protection and who has a statutory right to reject uninsured motorist coverage, and the members of his family residing in the same household. The protections afforded the first class is broad. Insured of the first class are protected regardless of their location or activity from damages caused by injury inflicted by an uninsured motorist.

*Id.* A second-class insured is one who falls outside the first class but is still entitled to protection for damages from injuries they sustain while occupying an insured vehicle. *James v. James*, 25 S.W.3d 110, 113 (Ky. 2000).

Here, the Policy distinguishes between the coverage provided to named insureds and others. Uninsured motorist coverage extends to (1) named insureds under the Policy, when the named insured is an individual, and (2) anyone "occupying" a covered vehicle, which the Policy defines to mean "in, upon, getting in, on, out or off." (R. 19-11 at Page ID#: 375.)

In their motions for summary judgment, both Mullins and Travelers raise arguments on the issues of whether Mullins is a first-class insured under the Policy, and if not, whether he qualifies as a second-class insured as an individual "occupying" a covered auto. Mullins argues that he is a first-class insured because under the doctrine of illusory coverage, he should be deemed a named insured, while Travelers argues that the doctrine does not apply and that under the unambiguous language of the Policy, Mullins is not a named insured. Mullins argues that even if he is not a first-class insured, he is entitled to uninsured motorist coverage because he was "occupying" the truck at the time of the accident. Travelers argues

that under the terms of the Policy and Kentucky law, Mullins was not "occupying" the truck and is therefore not entitled to coverage.

Additionally, Travelers argues that it is entitled to summary judgment because Mullins breached the terms of the Policy, which contains an exclusion stating that the Policy "does not apply to . . . [a]ny claim settled without [Travelers's] consent." (*Id.*) Travelers argues that Mullins did not provide notice of his $900,000 settlement with Genton, and that Mullins signed the settlement agreement without obtaining Travelers's consent. In response, Mullins argues the exclusion is prohibited under Kentucky law.

## I.   Mullins Is Not a First-Class Insured

### A.   Mullins Is Not a Named Insured Under the Terms of the Policy

The Policy lists three named insureds. Bluegrass is listed on the Policy's declarations page, (R. 19-11 at Page ID#: 339), and the company's owner and president Mark Johnson, along with his wife Ginger Johnson, are listed in an endorsement to the Policy (R. 19-11 at Page ID#: 387). Plaintiff is not identified as a named insured in the Policy, did not purchase the policy, has never paid premiums on the Policy, and never made payments to Bluegrass for uninsured motorist coverage.

Nevertheless, Mullins argues that he is a first-class insured because he was an employee of Bluegrass, which is a named insured. (R. 19 at 8.) In support of his argument, he cites caselaw for the proposition that it is Kentucky public policy to ensure individuals injured by negligent uninsured motorists are compensated and that insurance policies are to be strictly construed against the insurer. (*Id.*) Plaintiff is correct that if an insurance policy's language is ambiguous and susceptible to more than one reasonable construction, courts are to construe the ambiguity against the insurer. *Richardson v. Mut. of Omaha Ins. Co.*, No. 3:06CV-197-H, 2007 WL 1577942, 2007 U.S. Dist. LEXIS 39704, at *4 (W.D. Ky. May 31, 2007). But when "the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002).

Here, the Policy's terms as to who is an insured are clear and unambiguous. Bluegrass, Mark Johnson, and Ginger Johnson are each identified in the Policy as named insureds. Mullins is not. He is therefore not a named insured under the terms of the Policy.

## B.     The Policy's Uninsured Motorist Coverage is Not Illusory

Mullins argues that even if he is not listed as a named insured, he should be deemed one under the doctrine of illusory coverage. (R. 25 at 8–10; R. 26 at 5–7.) Under Kentucky law, illusory coverage exists where an insurance policy's language "essentially denies the insured most if not all of a promised benefit." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App. 2012) (citation omitted). The doctrine applies "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* at 129.

The Policy's uninsured motorist coverage compensates an insured for damages resulting from bodily injuries that he sustains because of an accident caused by an uninsured motorist. (R. 19-11 at Page ID#: 375.) The Policy clearly explains who is considered an insured:

> **B. Who is an Insured**
> If the Named Insured is designated in the Declarations as:
> 1.  An individual, then the following are "insureds":
>     a.  The Named Insured and any "family members"
>     b.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."
>
> . . .
>
> 2.  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>     a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto."

(*Id.*)

According to Mullins, this coverage is illusory because it purports to give first-class coverage to Bluegrass, but that none actually exists since Bluegrass, a corporate entity, cannot sustain bodily injury. He argues that uninsured motorist coverage under the Policy extends only to Bluegrass, and thus unless employees of the corporation are deemed insureds, uninsured motorist coverage would be functionally nonexistent.

– 6 –

Mullins's argument misses the mark for two reasons. First, because first-class coverage under the Policy extends not only to Bluegrass, a corporate entity, but also to two individuals: named insureds Mark and Ginger Johnson. For that reason alone, first-class uninsured motorist coverage is not illusory—the Johnsons are natural persons who can sustain bodily injury. Second, even if the Johnsons were not named insureds, coverage would not be illusory because there is no requirement that uninsured motorist policies "provide first-class coverage under any and all circumstances." *Metzger v. Auto-Owners Ins. Co.*, No. 2016-CA-1625-MR, 2018 Ky. App. Unpub. LEXIS 32, 2018 WL 480524, at *6 (Ky. Ct. App. Jan. 19, 2018). If the language of the policy makes clear that it does not provide first-class coverage to a corporate entity, coverage is not illusory. *Ray v. Secura Ins.*, No. 3:19-CV-307-CHL, 2021 WL 1206411, 2021 U.S. Dist. LEXIS 60834, at *21–22 (W.D. Ky. Mar. 30, 2021) (citing *Metzger*, 2018 WL 480524, at *1–2) (analyzing policy language virtually identical to the current case and concluding coverage was not illusory where the terms of the policy made clear that first-class coverage is only provided to individuals).

Here, the Policy only provides for first-class uninsured motorist coverage when the named insured is an individual, and not when the named insured is a corporation such as Bluegrass. None of the cases cited by Mullins support the proposition that a policy is illusory where no first-class coverage is provided to a named insured, nor is the Court aware of any such authority. Accordingly, the Policy's uninsured motorist coverage is not illusory and Mullins is not entitled to first-class coverage under the Policy.

## II.    Mullins Is Not a Second-Class Insured

Even though Mullins is not a first-class insured, he may still qualify for coverage as a second-class insured. The Policy extends uninsured motorist coverage to individuals "occupying" a covered automobile, and defines "occupying" as "in, upon, getting in, on, out or off." (R. 19-11 at Page ID#: 377.) There is no genuine dispute that Mullins was not "in, upon, getting in, on, out or off" the covered truck when the accident occurred, as the parties agree he was at least 100 feet away from the truck when he was struck by Genton's vehicle. But "[i]n addition to the policy language, Kentucky case law, notably *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney*, controls the meaning of the term 'occupying.'" *Smith v.*

*Union Ins. Co.*, 835 F. App'x 864, 865 (6th Cir. 2020) (citing *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164 (Ky. 1992)).

In *McKinney*, the Kentucky Supreme Court expanded the definition of the term "occupying" when it is used in uninsured motorist insurance policies, holding that a person occupies a vehicle for purposes of uninsured motorist coverage if:

> (1) there is a causal relationship between his injury and the use of the vehicle;
>
> (2) the injured party was in reasonably close geographic proximity to the vehicle at the time of his injury;
>
> (3) the injured person was "vehicle oriented rather than highway or sidewalk oriented at the time"; and,
>
> (4) the injured person was "engaged in a transaction essential to the use of the vehicle" at the time of the injury.

831 S.W.2d at 168. While the parties agree that these four factors govern, they disagree about whether Mullins meets the first, third, and fourth factors.

### 1.    Causal Relation or Connection

The first *McKinney* factor requires that there be a sufficient causal relation or connection between the injury and the use of the insured vehicle. *McKinney*, 831 S.W.2d at 168.

At the time of the accident, Mullins was standing in the center of the roadway while the truck was parked in a parking lot 100–150 feet away. (R. 19 at 12–13.) Mullins was spotting and flagging traffic so that his co-worker could drive an excavator across the roadway. His supervisor, Carmichael, was in the truck with another employee discussing her job for the day and occasionally watching Mullins and his co-worker. (R. 19-5 at 46, 61.)

In his motion for summary judgment, Mullins argues that there is a sufficient causal connection between his injuries and the multiple uses that he argues the truck was being put to. He argues that the truck was being put to multiple uses: for transportation to and from the job site, as a mobile office for his supervisor, as a monitoring platform for his supervisor to "function as a lookout," and as a waiting/destination room where he was to return. (R. 19 at 10.) But even if the Court accepts Mullins's characterization of the truck's uses, there is

no causal connection between those uses and the injuries he suffered after being struck by Genton's vehicle.

The Kentucky Court of Appeals' decision in *Gill v. Specialty National Insurance* to be instructive on this point. No. 2005-CA-000694-MR, 2006 WL 658900, 2006 Ky. App. Unpub. LEXIS 93 (Ct. App. Mar. 17, 2006). In that case, a police officer was struck by passing motorist while he was directing traffic. *Id.,* at *1. The officer made an underinsured motorist claim to the city's insurer, but because he was not a named insured, he could only qualify for coverage if he was "occupying" his cruiser, which was a covered automobile and was parked in the road when the officer was injured. *Id.*, at *1–2. The court held that there was no causal between the vehicle and the officer's injury because he "was in the roadway exposed to traffic not because of his vehicle, but rather because of his non-vehicle-related job" of directing traffic. *Id.*, at *4.

Like the officer in *Gill*, Mullins was not exposed to traffic because of any use of the truck, but because of his non-vehicle-related job of spotting and flagging traffic. Mullins was injured because he was standing in the roadway, and he was in the roadway because he was flagging traffic for the excavator. He would have been in the roadway regardless of what the truck was being used for—Mullins's job was to flag traffic for the excavator, and that job was not contingent on how the truck was being used.

The decision in *Smith v. Union Insurance Company* further illustrates that there is no causal connection in Mullins's case. 462 F. Supp. 3d 740 (W.D. Ky. 2020). In *Smith*, the plaintiff drove a company truck to a worksite and parked it on one side of the road while his co-worker parked another truck on the other. *Id.* at 741. When the co-worker went to move his truck, the plaintiff stood in the road to stop oncoming traffic and was hit by an unknown driver. *Id.* The plaintiff sought uninsured motorist coverage from the defendant, and the coverage question hinged on whether he was "occupying" a covered automobile when he was injured. Both the truck the plaintiff parked and the truck his co-worker was driving across the road were covered vehicles under the policy. However, the district court only addressed the question of whether the plaintiff was occupying *his* truck and not whether he was occupying the co-worker's truck that he was stopping traffic for. The court granted summary

judgment in favor of the defendant, holding that under *McKinney*, the plaintiff was not occupying the truck he had parked at the time he was struck. In addressing the causal connection factor, the district court held that even though the plaintiff "intended to return to his vehicle[,] the act of flagging traffic was separate from the use of that vehicle." *Id.* at 743.[1]

The same is true in the present case. Mullins's act of flagging for the excavator was separate from any use of the truck—"stopping traffic is independent of his previous and future intended use of [the] vehicle." *Id.* Like the plaintiffs in *Gill* and *Smith*, Mullins left the truck and was in the roadway for reasons entirely unrelated to the truck. Accordingly, there is no causal relation or connection between the use of the insured truck and the injuries Mullins sustained as a result of being struck by Genton's vehicle.

### 2.     Geographic Proximity

The second *McKinney* factor requires that the injured person be in reasonably close geographic proximity to the insured vehicle. *McKinney*, 831 S.W.2d at 168. Here, Mullins has presented evidence that he was within 150 feet of the truck at the time of the accident. (R. 19 at 12–13.) This meets the reasonable proximity test given that the Kentucky Supreme Court found a distance of 130–200 feet was close enough to meet the second prong in *McKinney*. 831 S.W.2d at 167. Travelers has not pointed to any evidence that would create a genuine issue of material fact regarding Mullins's proximity to the truck and does not appear to dispute that he was sufficiently close to the truck under *McKinney*. Mullins has therefore met this factor.

---

[1] The United States Court of Appeals for the Sixth Circuit reversed the district court's grant of summary judgment not because it erred in determining that the plaintiff was not "occupying" *his* truck, but because it did not address whether the plaintiff was "occupying" his *co-worker's* truck. *Smith v. Union Ins. Co.*, 835 F. App'x 864 (6th Cir. 2020). Applying the *McKinney* factors, the Sixth Circuit held that the plaintiff was "occupying" his co-worker's truck at the time of his injury and reversed the grant of summary judgment on that ground. However, the Sixth Circuit did not indicate that the district court erred in its analysis of whether the plaintiff was "occupying" his own truck. Because the Court of Appeals did not indicate disapproval of the district court's analysis as to whether the plaintiff was "occupying" his own truck and reversed on other grounds, the district court's decision may be used as persuasive authority.

### 3.    Vehicle Oriented or Highway Oriented

The third *McKinney* factor requires the injured person to have been vehicle oriented, rather than highway or sidewalk oriented, at the time they were injured. *McKinney*, 831 S.W.2d at 168. In *McKinney*, the Kentucky Supreme Court found that the plaintiff was "vehicle-oriented" when she was "was actively engaged in a safety activity essential to the use of the insured truck and was attempting to carry out the reasonable act of protecting not only the insured disabled vehicle, but also all other persons and vehicles using that highway," which her vehicle had obstructed. *McKinney*, 831 S.W.2d at 167. Similarly, in *Chandler v. American Guarantee & Liability Insurance*, the court held that the plaintiff was vehicle-oriented when he was flagging traffic to warn drivers that the insured truck was blocking the road to install road signs. No. CIV.A. 04-226-DLB, 2005 U.S. Dist. LEXIS 48152, 2005 WL 2250836, at *5 (E.D. Ky. Sept. 15, 2005). As the court explained,

> while it may not have been the sole focus, protecting the [] insured vehicle was one of [the plaintiff]'s concerns. [The plaintiff] had been driving the truck that morning. He had stopped the vehicle in the travel lane at earlier sign placement locations, and subsequently moved the vehicle further along the road. The accident likely would not have occurred without the use of the [insured] truck. In the seconds before impact [the plaintiff]'s attention, at least in part, was directed to the vehicle and its position in the lane of travel.

*Id.*

Here, unlike in *McKinney* and *Chandler*, the Plaintiff was not protecting the insured vehicle, he was protecting the excavator. Further, the insured truck in this case was nowhere near the roadway, much less blocking the road like the vehicles in *McKinney* and *Chandler*, and the accident likely would have occurred regardless of the insured truck's use.

Mullins relies heavily on the fact that he intended to return to the truck to argue that he was vehicle oriented. However, Mullins's "intended future use of his vehicle is not enough for this Court to find he was oriented towards that vehicle when he was flagging traffic." *Smith*, 462 F. Supp. 3d at 744. Mullins was engaged in an activity entirely unrelated to the use of the truck— flagging traffic for the excavator. When a plaintiff is engaged in an activity unrelated to the insured vehicle, his intent to return to that vehicle is insufficient to establish that he was vehicle oriented. *Id.* at 743 (plaintiff's intent to return to the insured vehicle did

not show he was vehicle oriented because his "action of stopping traffic [was] independent of his . . . future intended use of his vehicle"); *Baker v. Christy*, No. 7:19-CV-17-EBA, 2019 WL 5212898, 2019 U.S. Dist. LEXIS 178667, at *11 (E.D. Ky. Oct. 16, 2019) (holding that temporarily leaving the insured vehicle with an intent to return to it does not establish occupation of the vehicle because "the overriding factor is not that [the plaintiff] would have ultimately returned to the vehicle soon, but rather the reason for leaving the car was connected to her vehicle"); *Muncy v. Criswell*, No. 3:07-0563, 2009 U.S. Dist. LEXIS 144579, at *9 (S.D. W. Va. Jan. 22, 2009) (applying Kentucky law and holding that "[t]he overriding factor is not that [the plaintiff] ultimately would have returned to her vehicle, but that the accident occurred while she performing a non-vehicle-related task").

Mullins also argues that he was vehicle oriented because while flagging traffic, he was often looking at the truck, thinking about the truck, and somehow physically aligned with the truck. In his motion for summary judgment, he states that he "was focused on the location of the Truck, even though he was guiding the excavator across the street," (R. 19 at 16), that "[h]e kept a lookout for the company truck, whenever he was not working out of it or riding in it," (R. 19 at 16), that "[t]here was no time during [the job] that the Truck was off his mind, or when he wasn't physically and mentally aligned or oriented with it," (R. 19 at 14), and that "he was vehicle focused on the truck . . . because he knew he was being monitored by his supervisor" (R. 19 at 16). However, there does not appear to be any evidence supporting these assertions. Mullins has not pointed to depositions, statements, or any other evidence from which the Court could conclude that he was focusing obsessively on or mentally tethered to the truck—he merely asserts that to be true in his briefs. His own deposition indicates that his attention was focused on his job assignment at the time he was struck and the moments immediately prior. (R. 19-14 at 31–32 (stating that he when he saw Genton's vehicle, which appeared to be stopped, he "looked around the excavator to see if anything was coming" and then "motioned Chris to come on, and that's all [he] remember[s] from that moment").)

But even if the Court accepts Mullins's assertions as true, they are irrelevant to whether he was vehicle oriented or highway oriented at the time of the accident. Whether a person is vehicle oriented or highway oriented is not determined by where the person is

looking or where their attention is focused at the time they are injured. Rather, a person's orientation based on the activity in which they are engaged. A person is vehicle oriented when they are performing some task or are engaged in some function because of the insured vehicle, and when a plaintiff is engaged in an activity such as directing or warning traffic, he is only considered to be vehicle oriented if he is engaged with traffic because of the insured vehicle. *McKinney*, 831 S.W.2d at 167–68 (injured person was vehicle oriented when she was warning traffic that the insured vehicle was obstructing the roadway); *Smith*, 835 F. App'x at 866 (injured person was vehicle oriented when he was flagging traffic to help his co-worker drive the insured vehicle across the road); *Chandler*, 2005 U.S. Dist. LEXIS 48152, at *11–12 (injured person was vehicle oriented when he was flagging traffic to warn drivers that the insured vehicle was blocking the road).

A person is highway oriented, on the other hand, when they are directing traffic for reasons unrelated to the insured vehicle. For example, in *Gill* the Kentucky Court of Appeals held that the plaintiff police officer was highway oriented because he was directing traffic for reasons wholly unrelated to the police cruiser he had parked in the roadway. *Gill*, 2006 Ky. App. Unpub. LEXIS 93, at *4; *see also Muncy*, 2009 U.S. Dist. LEXIS 144579, at *8 (applying Kentucky law and holding that the plaintiff was highway oriented when she was performing the non-vehicle-related task of moving construction barrels). Likewise, in *Smith*, the district court held that the plaintiff was highway oriented because he was stopping traffic to help his co-worker cross the road and not for any reason related to the insured vehicle he had parked nearby. *Smith*, 462 F. Supp. 3d at 744. The same is true in cases where the injured person was in the roadway but engaged in some activity other than directing traffic. In *Baker*, the plaintiff was in the roadway for unknown reasons and was struck by a passing motorist. *Baker*, 2019 U.S. Dist. LEXIS 178667, at *13. Though it did not go so far as to find the plaintiff highway oriented, the court held that the plaintiff could not show she was vehicle oriented because she "did not establish that she was outside her vehicle to engage in some function related to her vehicle." *Id.*

Here, Mullins was not in the road to engage in a function related to the insured vehicle. He was performing the non-vehicle-related task of flagging traffic so that his co-

– 13 –

worker could move an excavator across the road. He was engaged with traffic solely because of the need to move the excavator, and not for any reason related to the truck, which was parked in a parking lot completely off the roadway. Accordingly, he was highway oriented at the time he was struck by Genton's vehicle.

### 4.      Essential to Use of the Vehicle

The fourth and final *McKinney* factor requires that the injured person "be engaged in a transaction essential to the use of the vehicle at the time" of their injury. *McKinney*, 831 S.W.2d at 168.

Here, Mullins was not engaged in a transaction that was essential to the use of the truck at the time of the accident. He was flagging traffic so that the excavator could be moved across the roadway, while the truck was parked in a parking lot 100–150 feet away. "[T]he 'essential use' requirement appears to mean what it says: that the injured party must be engaged in an act essential to the operation of the insured vehicle." *Greenwich Ins. Co. v. Hall*, No. 11-66-ART, 2012 WL 5868915, 2012 U.S. Dist. LEXIS 165371, at \*5 (E.D. Ky. Nov. 20, 2012). Mullins was not so engaged. His task was focused exclusively on traffic and the excavator, and completely unrelated to the truck. It was therefore not essential to the truck's use. *See Gill*, 2006 Ky. App. Unpub. LEXIS 93, at \*4 (holding that plaintiff police officer who was flagging traffic was not engaged in transaction essential to the use of his vehicle because his task "had nothing to do with securing its future use); *see also Smith*, 462 F. Supp. 3d at 744 (holding that plaintiff's "act of flagging traffic was not essential to the use of his vehicle that was parked off the side of the road").

Having taken the facts in the light most favorable to Mullins, the Court finds that Mullins is not entitled to uninsured motorist coverage under the Policy.[2] He has failed to demonstrate that a reasonable jury could find he was "occupying" the truck, and is therefore not entitled to uninsured motorist coverage as a second-class insured under the Policy. Further, as explained above, Travelers has shown there is no genuine dispute that Mullins

---

[2] Because Mullins is not an insured under the Policy, the Court need not reach the issue of whether he obtained Travelers's consent to settle his claims against Genton and whether his claims against Travelers are barred by the Policy's exclusion for claims settled without Travelers's consent. (*See* R. 22 at 19–21.)

is not a named insured under the Policy, and he is therefore not entitled to uninsured motorist coverage as a first-class insured under the Policy. Accordingly, Mullins's claim for UM/UIM coverage in Count I of his complaint must be dismissed. Mullins's remaining claims under the Kentucky Unfair Claims Settlement Practices Act in Count II of his complaint are derivative of his dismissed claim in Count I, and because there can be no Unfair Claims Settlement Practices Act claims if there is no coverage, Mullins's remaining claims must be dismissed as well. *See Lifeline Health Grp., Inc. v. Nat'l Union Fire Ins. Co.*, 665 F. Supp. 2d 770, 781 (W.D. Ky. 2009) (dismissing plaintiff's Unfair Claims Settlement Practices Act claims that were derivative of claims for insurance coverage).

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that:

(1) Plaintiff Jarred Mullins's motion for summary judgment on the issue of insurance coverage (R. 19) is **DENIED**;

(2) Defendant Travelers Property Casualty Company of America's cross motion for summary judgment (R. 22) is **GRANTED**;

(3) All claims against Defendant Travelers Property Casualty Company of America are **DISMISSED WITH PREJUDICE** and this matter shall be **STRICKEN** from the active docket;

(4) Judgment will be entered contemporaneously with this Opinion and Order.

Dated August 30, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY